**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MACDONALD TAYLOR | : | CIVIL ACTION |
| Petitioner | : | |
| | : | |
| v. | : | NO. 11-7702 |
| | : | |
| PATHMARK INC., et al. | : | |
| Respondents | : | |

**MEMORANDUM**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                    March  11, 2013

## I.    INTRODUCTION

Plaintiff MacDonald Taylor ("Plaintiff" or "Taylor") filed this personal injury action on December 16, 2011 against Pathmark Inc. and Advanced Snow and Ice Removal ("ASI") arising out of a fall on Defendant Pathmark's property.  (Doc. 1.)  On May 4, 2012, ASI filed a third party complaint joining Grassman Landscape, Grassman & Son, and Grassman Landscape, Inc. ("Grassman") as third party defendants.  (Doc. 8.)  Presently before the Court is ASI's Motion for Summary Judgment (Doc. 31), Plaintiff's Response thereto (Doc. 34), as well as "Plaintiff's Motion for Leave to File First Amended Complaint" (Doc. 43), the "Answer of Third Party Defendant[], [Grassman] to Plaintiff's Motion for Leave to File an Amended Complaint" (Doc. 46), and "Defendant's, Advanced Snow and Ice Removal, Answer in Opposition to Plaintiff's Motion for Leave to File First Amended Complaint" (Doc. 47), together with "Plaintiff's Motion for Stay of the Pending Motion for Summary Judgment of the Defendant Advanced Snow and Ice Solutions" (Doc. 44) and the Responses of Defendants Grassman and ASI thereto.  (Docs. 45, 48.)

For the reasons set out within, we will grant "Plaintiff's Motion for Leave to File First Amended Complaint," deny "Plaintiff's Motion for Stay Pending Motion for Summary Judgment of Defendant Advanced Snow and Ice Solutions as Moot," and grant the "Motion for Summary Judgment of Defendant, Advanced Snow and Ice Removal" as to Count Two: Breach of Contract.

## II.   FACTUAL AND PROCEDURAL HISTORY[1]

The Great Atlantic and Pacific Tea Company ("A&P") entered into a "Snow Plowing Agreement" ("Plowing Agreement") on October 8, 2009 with ASI.[2]  (Doc. 31 at ¶ 10; Ex. C.) The agreement set out ASI's obligations regarding the removal of snow at various properties affiliated with A&P, including the Pathmark grocery store, located at 421 69th Street, Upper Darby ("Pathmark").  *Id.*[3] It also contained an indemnification clause.[4]  *Id.*  ASI then entered into

---

[1] Unless otherwise noted, the following facts are undisputed.  Additionally, as we write for the parties, we limit our recitation of the procedural history to only those matters necessary for the resolution of this motion.

[2] We note that while the parties report that "Defendant Advanced Service Solutions entered into a 'Snow Plowing Agreement' with Defendant Pathmark," the "Snow Plowing Agreement," which was attached to ASI's as Exhibit C, reveals that the contract was actually between A&P and ASI.  The agreement did, however, cover the Upper Darby Pathmark store, in that Pathmark was an affiliate of A&P.  We will refer to this "Plowing Agreement" as an agreement between Pathmark and ASI for the sake of consistency.

[3] The agreement specified the snow and ice removal obligations of ASI.  (Doc. 31; Ex. C.)  The relevant portion of the Agreement states:

> 2. Snow Plowing Company shall remove snow from the sidewalks and other walks, the approaches, the service and receiving areas, the inside of cart corrals, the driveways and the parking lots of and around an A&P Store where at least one and one-half (1 ½) inches of snow (i) has fallen or (ii) has accumulated during a twenty-four (24) hour period (each such event being referred to as a "Minimum Snowfall").  A Minimum Snowfall shall be determined according to reports or measurements of the National Weather Service or of the local municipality in which the A&P Store is located.  Snow removal shall occur within three (3) hours of the Minimum Snowfall.  Snow Plowing Company will perform its snow removal service between the hours of 10:00 p.m. and 7:00 a.m. ; provided, however, that in the event of a Minimum Snowfall that

(Continued on the next page…)

an "Independent Contractor's Agreement" ("Grassman Agreement") with Grassman on November, 23, 2009, in which it assigned to Grassman its obligations to Pathmark as set out in the "Plowing Agreement." (Doc. 31 at ¶ 11; Ex. D.)

Taylor alleges that on December 19, 2009, he was walking on a sidewalk outside of the Pathmark store, when he slipped and fell on ice, and sustained injuries including a torn rotator cuff. (Doc. 31 at ¶¶ 3, 4.) On December 16, 2011, he commenced this action against Pathmark

---

> requires snow removal between the hours of 7:00 a.m. and 10:00 p.m., Snow Plowing Company will perform its snow removal service between the hours of 7:00 a.m. and 10:00 p.m., Snow Plowing Company shall remove snow from the sidewalks and other walks, the approaches, the service and receiving areas and the driveways of the affected A&P Store within such three (3) hour period to be followed by the removal of the snow from the remaining areas of such A&P Store during the hours from 10:00 p.m. to 7:00 a.m. . . .
>
> 4. A&P may call upon Snow Plowing Company to perform additional services (the "Additional Services") during the hours of 9:00 a.m. and 10:00 p.m. and Snow Plowing Company shall, on a priority basis, perform the Additional Services upon telephonic request. A&P shall promptly confirm its telephonic request for the Additional Services in writing to Snow Plowing Company. . . .

(Doc. 31; Ex. C.)

[4] This clause provided in part:

> 9. Snow Plowing Company shall indemnify, defend and hold harmless A&P and the directors, officers, employees, and agents (each a "Representative") of A&P, and its parent and subsidiaries (and their Representatives), in connection with any and all actions, lawsuits, demands or any other types of claims alleging liability for personal injury or property damages, relating to Snow Plowing Company's (including its Representatives') (i) negligent acts or omissions, (ii) performance or nonperformance of the Services or Additional Services as required under this Agreement, or (iii) failure to comply with any applicable law, regulation or ordinance (the "Claims Indemnification Obligation"). . . .

(Doc. 31; Ex. C.)

and ASI alleging a claim of negligence as to Pathmark and a claim of breach of contract as to ASI.  (Doc. 1.)  In its answer filed on April 30, 2012, ASI asserted a crossclaim against Pathmark and on May 4, 2012, ASI filed a third party complaint to join Grassman Landscape, Grassman & Son, and Grassman Landscape, Inc. ("Grassman") as Third Party Defendants.  (Docs. 5, 8.)

Pathmark filed a "Notice of Discharge and Release" on June 5, 2012, advising that A&P and its listed affiliates, including Pathmark, had filed for Chapter 11 protection in the United States Bankruptcy Court for the Southern District of New York, resulting in "a permanent injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover, or offset any debt that is discharged or released under the plan." (Doc. 11 at 3.)  On July 10, 2012, a default judgment was entered in favor of ASI against Grassman.  (Doc. 13.)  ASI filed this Motion for Summary Judgment on December 13, 2012 and Plaintiff filed his Response on January 8, 2012.  (Docs. 31, 34.)  Third party Defendant Grassman subsequently filed a motion to "Strike or Set Aside Default," with an accompanying stipulation signed by counsel for ASI consenting to having the default judgment order against Grassman vacated.  (Doc. 37.)  The stipulation was "so ordered" on February 4, 2013.  (Doc. 40.) On February 14, 2013, Plaintiff filed a "Motion for Leave to File First Amended Complaint," and a "Motion for the Stay of the Pending Motion for Summary Judgment of the Defendant Advanced Snow and Ice Solutions."  (Docs. 43, 44.)  Defendants ASI and Grassman each filed responses in opposition to these two motions.  (Docs. 45, 46, 47, 48.)  These matters are now ripe for review.

## III.    DISCUSSION

In the interest of efficiency, we will address all pending motions in this memorandum opinion and order.  We will first address Plaintiff's Motion for Leave to File an Amended Complaint and then turn to Defendant ASI's Motion for Summary Judgment.

### A.    Plaintiff's Motion for Leave to File an Amended Complaint

In this motion, Taylor requests leave to file an amended complaint in order to include a third count alleging a claim of negligence against ASI.  (Doc. 43 at 3.)  The first and second counts in his amended complaint are identical to those set out in his original complaint.[5]  ASI opposes this motion for leave, arguing that there has been "undue delay" and "bad faith" in Plaintiff's filing of the motion; that the amendment would be "futile;" and that it is barred by the applicable statute of limitations.  (Doc. 47 at 2, 5-6.)  We will first set out the legal standard for granting a motion for leave to amend a complaint and then discuss each of Defendant's contentions in turn.

### 1.    Legal Standard Governing Leave to Amend

A court reviewing a motion for leave to amend a pleading is to "freely give leave when justice so requires."  Fed.R.Civ.P. 15(a)(2).  The Supreme Court has held that

> [i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'

*Forman v. Davis*, 371 U.S. 178, 182 (1962.)  Our Circuit has held that delay alone is not a sufficient justification for denial of leave to amend.  *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d

---

[5] Count One of Plaintiff's Original and Amended complaint alleges a claim of negligence against Pathmark.  (Doc. 1 at 5-8); (Doc. 43; Attach. 1 at 2-5.)   Count Two of Plaintiff's Original and Amended Complaint alleges a breach of contract claim against ASI.  *Id.*

Cir. 1984). "[H]owever, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (quoting *Adams*, 739 F.2d at 868). In consideration of the issue of undue delay, we are instructed to "focus on the movant's reasons for not amending sooner," and in consideration of the issue of prejudice, we are instructed to "focus on the effect on the defendants." *Adams*, 739 F.2d at 868.

Futility can also serve as a reason to deny a motion for leave to amend a complaint. *Forman*, 371 U.S. at 182. In this context, futility "means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 313 F.3d 113, 115 (3d Cir. 2000) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). The same standard used to assess "futility" is also used to evaluate legal sufficiency under Fed.R.Civ.P. 12(b)(6). *Id.* This requires that "a complaint [] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2009) (claim has facial plausibility when plaintiff pleads factual content allowing court to draw reasonable inference that defendant is liable).

### 2. Undue Delay and Bad Faith

Defendant ASI argues that Plaintiff's motion for leave to file his first amended complaint should be denied as "an untimely attempt to respond to Responding Defendant's Motion for Summary Judgment." (Doc. 43 at 4.) It contends that "when the party filing the motion for leave to amend has no adequate explanation for the delay, the delay can be considered 'undue' and this is a sufficient reason to deny leave to amend." (Doc. 47 at 6) (citing *Cureton*, 252 F.3d at 273.) ASI notes that Plaintiff has provided no explanation for his failure to file an amended

complaint earlier in the case.  *Id*.  It further argues that Taylor is "attempting to circumvent a ruling on [ASI's] Motion for Summary Judgment by setting forth an invalid claim of Negligence against Responding Defendant."  *Id*.  Thus, it maintains that Plaintiff's undue delay in filing his Motion for Leave to Amend "is evidence of bad faith which justifies denial of the Plaintiff's Motion."  *Id*.

Plaintiff filed his initial complaint on December 16, 2011.  (Doc. 1.)  On February 14, 2013, a year and nearly two months later, he filed a "Motion for Leave to File First Amended Complaint."  (Doc. 43.)  This motion was filed after the close of discovery[6] and during the pendency of ASI's Motion for Summary Judgment.  While we observe that Taylor's "Motion for Leave to Amend" is notably late, our case law instructs us that a delay of approximately fourteen months is not so egregious as to justify a denial of the motion for that reason alone.  *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 204-05 (3d Cir. 2006) (citing *Tefft v. Seward*, 689 F.2d 637, 639-40 (6th Cir. 1982) (delay of four years did not warrant denial of leave to amend); *Buder v. Merrill Lynch, Pierce, Fenner & Smith*, 644 F.2d 690, 694 (8th Cir. 1981) (delay of two and a half years was insufficient to justify denial of leave to amend)).

We must then consider Plaintiff's motives as well as any prejudice that may be suffered by the Defendants.  *Adams*, 739 F.2d at 868.  Defendants have not provided any evidence or suggestion that Plaintiff had any improper or dilatory motives in failing to amend his claim sooner.  While this failure may suggest evidence of less than diligent behavior on the part of

---

[6] Judge Baylson entered a scheduling order on August 1, 2012, prior to the parties consenting to Magistrate Judge Jurisdiction pursuant to 28 U.S.C. § 636(c).  (Doc. 16.)  The discovery deadline under this scheduling order was November 15, 2012.  *Id*.  A default judgment was entered against third party defendant, Grassman, on July 10, 2012.  On January 23, 2013, Grassman filed a motion to strike or set aside the default judgment.  (Doc. 37.)  This motion was granted on February 4, 2013.  (Doc. 40.)  An amended scheduling order was then issued, providing for additional time for discovery and a later trial date for the benefit of Grassman.

counsel, it does not follow that such delay in and of itself demonstrates bad faith. We observe that "[t]he liberality of Rule 15(a) counsels in favor of amendment even when a party has been less than perfect in the preparation and presentation of a case." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 206 (3d Cir. 2006) (citing *Forman*, 371 U.S. at 182). As we do not deem the length of time between the filing of Taylor's original complaint and the filing of his motion for leave to amend to constitute "undue delay," we are likewise unable to accept ASI's contention that the delay that may have occurred is "undue" or evidence of bad faith.

Further, the facts of this case do not suggest that ASI or Grassman will suffer any significant prejudice as a result of allowing Taylor to amend his complaint. The factual basis that he alleges supports his claim of negligence is nearly identical to the factual basis that he alleged in his breach of contract claim, which was included in his original complaint.[7] Thus, we do not see that much, if any, additional discovery will be necessary.[8] *Compare Coventry v. United States Steel*, 856 F.2d 514, 519-520 (3d Cir. 1988) (finding a lack of prejudice to the defendant where any additional discovery that might be necessary would not be unduly burdensome as it concerned the same subject matter as an issue already in the case) *with Berger v. Edgewater Steel Co*., 911 F.2d 911, 924 (3d Cir. 1990) (where prejudice to the defendant was

---

[7] *Compare* Plaintiff's claim of breach of contract in his Original Complaint, which states, "[c]learly Defendant Advanced Snow and Ice Removal breached he terms and conditions of its contract with Defendant Pathmark Inc., because it failed to remove snow and ice from the sidewalk, where Defendant [sic] slipped and fell," (Doc. 1 at ¶ 13) *with* his Amended Complaint, in which he argues that "Defendant Advanced Snow's [sic] was negligent in breaching its duty of care to Plaintiff, when it failed to remove snow and ice from the sidewalk, resulting in Plaintiff's slip and fall, when he traversed the sidewalk while leaving Pathmark." (Doc. 43-1 at ¶ 19.)

[8] Our belief that further discovery is unlikely to be warranted is bolstered by the fact that ASI included a discussion in its "Motion for Summary Judgment" in which it maintained that it was "not liable on any claim of negligence made by the Plaintiff." (Doc. 31 at 6.) Although a claim of negligence had not yet been formally raised against ASI, it nonetheless argued that it was not liable under this theory of liability. Thus, it appears ASI has already performed at least some work as to this claim.

established because new and extensive discovery would be required). In any event, the trial has been rescheduled for a later date, June 12, 2013, in order to accommodate third party defendant Grassman. (Doc. 41.) ASI will be provided with sufficient time to conduct any additional discovery it deems necessary. Accordingly, we will not deny Plaintiff's Motion for Leave to Amend based upon Defendant's claims of undue delay and bad faith.[9]

### 3. Futility

We turn next to ASI's argument that granting Plaintiff leave to amend will prove futile. ASI argues that the Court should deny Plaintiff's motion for leave to amend his complaint in that Taylor "cannot establish a valid claim of negligence under Pennsylvania law, and thus, said amendment would be futile." (Doc. 47 at 5.) In Count Three of his amended complaint, Taylor states,

> 18. Under Restatement of Torts 324(a), Defendant Advanced Snow owed third persons that traversed the Upper Darby Pathmark, like Plaintiff, a duty of care, where its contractual undertaking with Pathmark, involved the rendering of services which Defendant Advanced Snow should have recognized were necessary for the protection of third persons, thereby subjecting defendant advanced snow to liability for physical harm to third persons resulting from Defendant Advanced Snow's breach of said duty.
> 19. Defendant Advanced Snow's [sic] was negligent in breaching its duty of care to Plaintiff, when it failed to remove ice from the sidewalk, resulting in Plaintiff's slip and fall, when he traversed the sidewalk while leaving the Pathmark.
> 20. As a direct and proximate result of Defendant Advanced Snow's negligence, Plaintiff sustained physical injuries, including a torn rotator cuff in his right shoulder, pain and suffering and metal [sic] anguish.

---

[9] We note that our Circuit has provided that

> [w]here the legal theory of a complaint is rejected by the district court on a motion for summary judgment, but where an alternative theory has been raised which, on the same facts, is legally sufficient, it would be unusual for a district court not to allow plaintiff leave to amend because of 'undue delay.'

*Adams*, 739 F.2d at 858.

(Doc. 43; Attach. 1 at 5.)  Under the standard carved out in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*, a complaint is sufficient to withstand a 12(b)(6) motion, and accordingly, is not futile, if accepted as true, it "state[s] a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2009)).  While we are not purporting to suggest that we believe this claim will succeed on the merits, we are satisfied that it can withstand the applicable 12(b)(6) standard, as Taylor has alleged facts, that if accepted as true, state "a claim to relief that is plausible on its face."  *Bell Atlantic Corp*., 550 U.S. at 570.  Therefore, we will not deny Plaintiff's motion for leave to amend his complaint as futile.

### 4.    Statute of Limitations

We will next address ASI and Grassman's contention that Plaintiff's motion for leave to amend his complaint should be denied, as his claim of negligence is "barred by the applicable two year statute of limitations."  (Doc. 47 at 4) *see also* (Doc. 45 at 2.)  Under Pennsylvania law, negligence claims for personal injury actions are subject to a two-year statute of limitations.  42 Pa. C.S.A. § 5524.  Taylor's negligence claim against ASI is in fact outside the statute.[10]  This does not however, end our inquiry.

When a party seeks leave to file an amended complaint adding a new claim after the applicable statute of limitations has expired, the motion can only be granted if the new claim can be said to relate back to the filing date of the original complaint.  *See Estate of Grier ex re. Grier v. University of Pennsylvania Health System*, No. 07-4224 2009 WL 1652168 at *4 (E.D.Pa. 2009).  When a party seeks leave to file an amended complaint adding a new claim beyond the

---

[10] Taylor asserted a claim of negligence against ASI for the first time in his "Motion for Leave to File First Amended Complaint," which was filed on February 14, 2013.  (Doc. 43.)  He alleges that the incident giving rise to this claim occurred on December 19, 2009.  (Doc. 1 at ¶ 6.)

statute against an existing party, the applicable provision is Rule 15(c)(1)(B), which provides that "[a]n amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out in the original pleading." *See Estate of Grier ex re. Grier,* at *4 (citing *Finely Assocs., Inc., v. Sea & Pines Consol. Corp.*, 714 F.Supp. 100, 115-16 (D.Del. 1989); *Green v. Robinson*, 112 Fed. App'x 165, 168-69 (3d Cir. 2004)). It is clear to us that the claim of negligence relates back to the breach of contract claim set out in Plaintiff's original complaint, as the negligence alleged arose from the same occurrence as the breach of contract claim – namely, Taylor's alleged fall on December 19, 2009, at the Upper Darby Pathmark store. As Taylor's new count of negligence relates back to his original complaint, under Rule 15(c)(1)(B), his amendment is not barred by the applicable statute of limitations. Accordingly, we will grant "Plaintiff's Motion for Leave to File First Amended Complaint."

## B.     Defendant's Motion for Summary Judgment[11]

We turn next to Defendant ASI's Motion for Summary Judgment. ASI argued in this motion that it is entitled to summary judgment as "the available evidence is insufficient to establish a breach of contract claim made by the Plaintiff against Defendant [ASI]." (Doc. 31 at 13.) It contends that Plaintiff was neither a party to, nor a third party beneficiary of, its contract with Pathmark for snow removal at the Upper Darby store. *Id*. at 5. Thus, it maintains that Plaintiff cannot establish a breach of contract claim and that it is entitled to summary judgment,

---

[11] When ASI originally filed its Motion for Summary Judgment on December 13, 2012, our ruling on the motion had the potential to be case dispositive. (Doc. 31.) In light of our decision to grant "Plaintiff's Motion for Leave to File First Amended Complaint," however, our ruling upon Defendant's motion will only impact the breach of contract claim, which is set out as Count Two in both Plaintiff's Original and Amended Complaint. (Doc. 1; Doc. 43-1.) A grant of that motion will not be case dispositive as our determination on the Motion for Summary Judgment will not impact the negligence claim, set out as Count Three of the Amended Complaint. *Id.*

as there is no genuine dispute as to any material fact. *Id*. at 4. In his response in objection to ASI's motion, Taylor claims he was a third party beneficiary of the contract between Pathmark and ASI and "is therefore entitled to sue Defendant Advanced Snow and Ice for breach of contract." (Doc. 34 at 16.)

### 1.     Legal Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that, if accepted, "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id*.

In a summary judgment analysis, "[t]he moving party has the initial burden of demonstrating that no genuine issue of material fact exists." Jo*sey v. John R. Hollingsworth, Corp*., 996 F.2d 632, 637 (3d Cir. 1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). After the initial burden is met, "the burden shifts to the nonmoving party to present evidence that there is a genuine issue for trial." *Id*. (citing *Celotex Corp*., 477 U.S. at 324). When deciding whether there is a genuine issue for trial, "the inferences drawn from the underlying facts in the materials must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc*., 369 U.S. 654, 655 (1962). While the inferences are viewed in "the light most favorable" to the nonmoving party, they "must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). However, where "reasonable minds can differ as to the import of

proffered evidence that speaks to an issue of material fact, summary judgment should not be granted." *Gelover v. Lockheed Martin*, 971 F.Supp. 180, 181 (E.D.Pa. 1997).

### 2. Discussion

Plaintiff's complaint contains a claim of negligence against Defendant Pathmark and a claim of breach of contract against Defendant ASI. *See* Compl. at 5, 8. Count Two, the breach of contract claim against ASI, states in part:

> 12. Defendant Advanced Snow and Ice Removal entered into a contract with Defendant Pathmark Inc., for the removal of snow and ice from the sidewalk and parking lot of Defendant Pathmark's Upper Darby Store.

> 13. Clearly, Defendant Advanced Snow and Ice Removal breached the terms and conditions of its contract with Defendant Pathmark Inc., because it failed to remove snow and ice from the sidewalk, where Defendant [sic] slipped and fell.

> 14. As a business invitee and patron of Defendant Pathmark, Plaintiff is clearly a third party beneficiary of Defendant Advanced Snow's contractual obligation to clear all the snow and ice, from the common areas at Defendant Pathmark's Upper Darby store.

(Compl. at 7.) It is thus Plaintiff's contention that he was a third party beneficiary of the "Plowing Agreement" between Pathmark and ASI, and that ASI breached that contract because it "failed to remove snow and ice from the sidewalk where [he] fell." *Id.*

Defendant takes the position that "no breach of contract claim may be made as Plaintiff is not a party to Defendant Advanced Service Solutions' contract with Pathmark, nor is Plaintiff a third party beneficiary to any contract entered into by Defendant Advanced Service Solutions." (Doc. 31 at 4.) Thus, it argues that no breach of contract claim may be made.[12]

---

[12] Defendant additionally argues that no breach of contract occurred in that it satisfied its contractual obligations under the "Plowing Agreement" and that it is not liable for any claim of negligence. In that we have determined that Plaintiff was neither a party to nor a third party beneficiary of the "Plowing Agreement," we need not reach the question of whether ASI was in breach or not.
(Continued on the next page…)

In response, Plaintiff argues that he was a third party beneficiary to this contract. (Doc. 34 at 17.) Taylor states that "[c]learly, as a business invitee who was injured, as a direct and proximate result of Defendant Advanced Snow's failure to provide ice and snow removal services at the Upper Darby, Pathmark, pursuant to its contract with Pathmark, Plaintiff is a third party beneficiary of the contract and, therefore, entitled to sue Defendant Advanced Snow for breach of contract." (Doc. 34 at 16.) He adds that the language in the indemnification clause of the "Plowing Agreement," which provided that ASI would "indemnify, defend and hold harmless A&P [Pathmark]. . . . in connection with any and all actions, lawsuits, demands or any other types of claims alleging liability for personal injury," further demonstrates that the purpose of this contract was to "protect the safety of its customers and limit potential liability claims." *Id*. at 17 (citing Doc. 31; Ex. C). Further, he notes that the "suggestion that in entering [sic] the contract, Defendant Advanced Snow did not contemplate, and in fact agree to incur liability for contractual omissions which caused injury to Pathmark customers, like Plaintiff, is wholly absurd, in light of both the language of the contract and the clear intent of the parties." *Id*. at 18.

As it is clear that Taylor was not a party to the "Plowing Agreement," (*See* Doc. 31; Ex. C) we must consider Plaintiff's asserted third party beneficiary status. *See Shumate v. Twin Tier Hospitality, LLC*, 655 F.Supp.2d 521, 535 (M.D.Pa. 2009) (holding that whether a party is a third party beneficiary with standing to enforce a contract is a question of law for the Court). In Pennsylvania, this status, subject to limited exception, will be recognized only where the obligation to the third party "affirmatively appear[s] in the contract itself." *Sound of Market Street, Inc. v. Continental Bank International*, 819 F.2d 384, 389 (3d Cir. 1987.) Further, the law requires not just that the obligation "appear" in the contract, but the contract must show that

"*both* parties . . . express an intention to benefit the third party . . ." *Scarpitti v. Weborg*, 609 A.2d 147, 150-51 (Pa. 1992)(emphasis added).  Our examination of the agreement leads us to the conclusion that both parties did *not* express an intention to benefit third parties.

We then consider the exception drawn from the Restatement (Second) of Contracts, § 302 (1979), which provides that "(1) the recognition of the beneficiary's right must be appropriate to effectuate the intention of the parties and (2) the performance must satisfy an obligation of the promise to pay money to the beneficiary or the circumstances indicate that the promise intends to give the beneficiary the benefit of the promised performance."  *Sound of Market Street, Inc. v. Continental Bank International*, 819 F.2d 384, 389 (3d Cir. 1987).

Our examination of the authorities indicates that this exception has been narrowly construed, as Pennsylvania courts have declined to extend third party beneficiary status to all members of the general public.  *See Wawrzynek v. Statprobe, Inc.*, 422 F.Supp.2d 474, 483 (E.D.Pa. 2005) (refusing to expand the definition of third party beneficiary status to include "virtually every member of the public"); *Hicks v. Metropolitan Edison Co.*, 664 A.2d 529 (Pa. Commw. Ct. 1995) (stating, "[T]he [plaintiffs] would have us expand this concept to include virtually every member of the public.  We do not believe that parties ordinarily intend to confer such benefits upon the public at large or assume such massive potential liability when they enter a contract.").  Further, Pennsylvania courts have held that "the fact that the obligee knows that he will perform the contracted-for services for a third party is not, in itself, sufficient to vest the third party with standing to sue on the contract."  *Marsteller Community Water Authority v. P.J. Lehman Engineers*, 605 A.2d 413, 416 (Pa. Super. Ct. 1992); *see also Manor Junior College v. Kaller's Inc*., 352 Pa. Super. Ct. 1986).

In *Guerra v. Springdell Village Homewoners' Ass'n*, a woman who slipped and fell on ice sought to recover as a third party beneficiary of a snow removal contract between the homeowners' association, of which she was a paying member, and two landscaping companies. No. 11-200, 2011 WL 1303360 (E.D.Pa. Apr. 6, 2011). The Court declined to recognize this third party beneficiary status, noting that "[a]lthough the snow removal contracts may benefit paying members of the homeowners' association, the contracts would also benefit may other persons, including business invitees, trespassers, and social guests." *Id*. at *2. It added that under the plaintiff's reasoning, "every invitee, guest, and passerby. . . . would be able to sue the defendants for their alleged failure to adequately perform their respective contracts," which the court found did not comport with Pennsylvania law. *Id*.

In *Silverman v. Food Fair Stores, Inc.*, a plaintiff who fell in a parking lot adjacent to the defendant's market sought to recover against the defendant under a breach of contract claim. 180 A.2d 894 (Pa. 1962). The plaintiff alleged that she was a third party beneficiary to a contract between the market and its landlord, which obligated the market to keep the premises in "reasonably good repair" and included a clause whereby the market, as here, agreed to indemnify the landlord from any liability resulting from any injury sustained on the premises. *Id*. at 508-09. The court held that the plaintiff was not a third party beneficiary of the contract, reasoning that the intent of the contract was to "benefit *only* the landlord in certain circumstances by holding him free from liability." *Id*. at 510 (emphasis added).

In consideration of Plaintiff's argument that he is a third party beneficiary of the "Plowing Agreement" by virtue of his status as a business invitee, we note that *Guerra* informs us that the status of an individual in and of itself does not render him a third party beneficiary to a contract in which he is not a party. *See* No. 11-200, 2011 WL 1303360 (E.D.Pa. Apr. 6, 2011).

While it is true that Taylor and other business invitees may have been incidental beneficiaries of the "Plowing Agreement," as in *Guerra*, we cannot agree that in entering into this contract, Pathmark and ASI intended to create a right in every "invitee, guest, and passerby" to sue for alleged failure to adequately perform under the contract. *See* No. 11-200, 2011 WL 1303360, at *2 (E.D.Pa. Apr. 6, 2011). That notion is contrary to established Pennsylvania law, which has consistently declined to extend third party beneficiary status to the public at large. *See e.g.* *Wawrzynek v. Statprobe, Inc.*, 422 F.Supp.2d 474, 483 (E.D.Pa. 2005); *Hicks v. Metropolitan Edison Co.*, 664 A.2d 529 (Pa. Commw. Ct. 1995).[13]

Plaintiff additionally suggests that the indemnification clause in the "Plowing Agreement" demonstrates intent to contract for the "safety of its customers and to limit potential liability claims." However, *Silverman* instructs us that indemnification clauses within contracts must be construed to be what they purport to be, a benefit for the party being indemnified, not evidence of an intent to create a third party beneficiary. 180 A.2d 894 (Pa. 1962). Accordingly, we conclude that the indemnification clause in the "Plowing Agreement" does not signify an intent to contract for the benefit of a third party beneficiary, but rather evidences only an intent to confer a benefit of limited liability upon Pathmark. Thus, Plaintiff has failed to demonstrate that he was an intended third party beneficiary of this contract. Accordingly, he lacks standing to assert a breach of contract action arising from this contract.

## V.  CONCLUSION

For the reasons set out above, we will grant "Plaintiff's Motion for Leave to File First Amended Complaint," deny "Plaintiff's Motion for Stay Pending Motion for Summary Judgment

---

[13] While the Restatement acknowledges that there may be circumstances where other parties benefit from a contract, those parties are considered "incidental beneficiaries" and they do not have standing to assert a claim of breach. *See* Restatement (Second) of Contracts § 302 cmt. E (1979).

of Defendant Advanced Snow and Ice Solutions as Moot," and grant the Motion for Summary Judgment of Defendant, Advanced Snow and Ice Removal" as to Count Two: Breach of Contract. An appropriate order follows.